UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 10-00135 |
| VERSUS | * | JUDGE WALTER |
| JOSHUA JAMES MORO<br>JEREMY MATTHEW MORO<br>SONYA MARIE HART | * | MAGISTRATE JUDGE HORNSBY |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT JOSHUA JAMES MORO'S MOTION TO DISMISS

NOW INTO COURT, through the undersigned Assistant United States Attorney and Trial Attorney, Criminal Section, Civil Rights Division, Department of Justice (collectively, "the United States"), comes the United States of America and respectfully submits its response in opposition to defendant Joshua James Moro's ("the defendant") motion to dismiss the perjury charge pending against him (Dkt. No. 81). The recantation defense is only available to a defendant who recants his perjured testimony on his own initiative during the same continuous grand jury proceeding in which he initially lied, before the proceeding has been substantially affected, and before his perjury has become manifest. See 18 U.S.C. § 1623(d). The defendant cannot satisfy any of these requirements. The defendant never clearly recanted his perjury, as intended by Section 1623(d); instead, he repeatedly lied, equivocated, and waffled during his grand jury appearances and later disavowed the admission that he now claims constitutes his supposed "recantation." To the extent that the defendant ever corrected his perjured testimony, he only did so when confronted by the United States during a proffer on October 28, 2010, when his admissions could not be used directly against him, long after he had been indicted and the period for recantation had expired. The defendant's motion should be denied.

## I. BACKGROUND

### A. Relevant Procedural History

This case arises out of a cross-burning that the defendant conspired to carry out with his brother (defendant Jeremy Matthew Moro) and his cousin (co-conspirator Daniel Danforth) near the homes of their grandparents and their cousin, who was living with a black man.

On January 21, 2010, following trial by jury, the defendant's co-conspirator, Daniel Danforth, was convicted of three offenses related to this cross-burning (18 U.S.C. § 241, 844(h)(1), and 1519). Thereafter, the Court granted Danforth's post-conviction motion for judgment of acquittal as to the use of fire conviction and, on May 27, 2010, sentenced Danforth to 48 months imprisonment. Danforth and the United States filed cross-appeals, but ultimately entered into an agreement in which Danforth would cooperate with the prosecution of his accomplices and dismiss his appeal in exchange for the United States' dismissing its appeal. Both appeals have been stayed pending the outcome of this case.

Danforth's co-conspirators, the three defendants in the instant case, were each sent target letters on January 26, 2010. Attempts to resolve this matter pre-indictment were unsuccessful and, on April 29, 2010, the grand jury returned a one-count indictment (Dkt. No. 1), charging the defendant with conspiracy against rights (18 U.S.C. § 241). Continued plea negotiations failed and, on July 29, 2010, the grand jury returned a six-count superseding indictment (Dkt. No. 36), which, in addition to the pending civil rights conspiracy charge against the defendant, charged the defendant, Jeremy Matthew Moro, and Sonya Marie Hart with false statements (18 U.S.C. § 1001) and perjury (18 U.S.C. § 1623). After the United States and Danforth entered into a cooperation agreement, the grand jury returned a ten-count second superseding indictment ("2d SSI") (Dkt. No. 68), which added charges against Jeremy Matthew Moro for conspiracy against

rights (18 U.S.C. § 241), criminal interference with the right to fair housing (42 U.S.C. § 3631), use of fire in the commission of a federal felony (18 U.S.C. § 844(h)), and added charges against Jeremy Matthew Moro and against Sonya Marie Hart for conspiracy to obstruct justice (18 U.S.C. §§ 371, 1519). Each of the defendants has rejected pre- and post-indictment plea offers and this matter is set for trial on February 7, 2011.

On January 5, 2011, the defendant moved to dismiss the perjury count of the indictment (Count Five of the 2d SSI), claiming that Section 1623(d) bars prosecution of this offense because the defendant, during a second grand jury appearance, "recanted" the lies had had told during a previous grand jury appearance. As a factual matter, the defendant did not "recant" his false testimony. Any statement that could possibly be construed as a recantation occurred on October 28, 2010, -- after the defendant had already been indicted for perjury -- during a proffer session governed by an agreement barring direct use of the defendant's admissions. By that time, the window for any recantation contemplated by Section 1623(d) had long since closed.

  **B.**  **Relevant Factual Background**

    1.  The Defendant's June 24, 2009, Grand Jury Appearance

In connection with the investigation into the cross-burning, the defendant was subpoenaed to testify before a federal grand jury on June 24, 2009. At the beginning of his appearance, the defendant was advised of his rights and responsibilities, as were all witnesses appearing before the grand jury in connection with this investigation except the Federal Bureau of Investigation ("FBI") case agents. The defendant was specifically advised that he had a right not to incriminate himself and that he could be prosecuted for perjury, false statements, or obstruction of justice if he failed to testify truthfully. See 6.24.2009 Tr. at 3:2-11; 4:9-13.[1]

---

[1]   The defendant makes much of the question of whether he was a target of the investigation at the time he appeared before the grand jury. This is a non-issue. The defendant's status when

During this first grand jury appearance, the defendant testified that when he arrived at his brother's house, he saw Danforth in the front yard with a partially constructed cross made out of two pine limbs. See id. at 19:1-21:7. The defendant also testified that Danforth said he wanted to burn the cross at their grandparents' house because he was mad at them for allowing their cousin to "mix races," that is, to live with someone who was not the same race as her. See id. at 22:8-21; 23:22-24:12; 27:4-10. And, as set forth in the defendant's motion, the defendant also testified that Danforth asked the defendant to help burn the cross, to which the defendant claimed he said only no, he did not want to go. See Mot. at 1-2 (Dkt. No. 81); 6.24.2009 Tr. at 27:20-28:1; 28:17-19. This false testimony forms the basis of the perjury count pending against the defendant in Count Five of the 2d SSI. In truth and in fact, the defendant offered Danforth diesel fuel to help burn the cross and in doing so, entered into the conspiracy against rights, as charged in Count One of the 2d SSI. Although the evidence at trial will also show that Danforth and the defendant's brother carried out the plan while the defendant was off getting the fuel, this evidence does not mitigate the defendant's role in the conspiracy. The defendant's crime of conspiracy was complete at the moment he agreed to help out with the cross-burning, and was confirmed when he sent a text message asking if Danforth and his brother still needed the diesel.

2. The Defendant's September 25, 2009, Grand Jury Appearance

Following the defendant's first grand jury appearance, Danforth proffered with the United States and provided additional information concerning the cross-burning. As provided

---

he appeared before the grand jury is irrelevant to his purported recantation defense. See United States v. Scrimgeour, 636 F.2d 1019, 1026 (5th Cir. 1981) (holding that there is no requirement that the government inform the witness as his status as a target or potential defendant or of his statutory right to recant perjured testimony). As a factual matter, when the defendant appeared before the grand jury in June and September, 2009, he was not a target of the investigation. See USAM § 9-11.151 (defining "target" as a "putative defendant"). This is reflected in the fact that the defendant was not charged in the original indictment returned on September 25, 2009, and was not sent a target letter until January 26, 2010.

for in the proffer agreement, the United States made derivative use of this information and re-subpoenaed several individuals, including the defendant, to appear before the grand jury. The defendant declined to meet with representatives of the United States and the FBI in preparation for his grand jury appearance.

On September 25, 2009, the defendant appeared before the grand jury a second time and was repeatedly advised of his right not to incriminate himself and of his obligation to be truthful, both at the outset of his appearance and at various points during his testimony. See 9.25.2009 Tr. at 3:4-19; 4:19-23; 5:3-7; 15:20-16:4; 22:25-23:8. During this appearance, the defendant admitted at one point -- contrary to his previous testimony -- that when Danforth said he was going to burn a cross and asked the defendant for assistance, the defendant offered Danforth diesel fuel to use to burn the cross. See id. at 11:19-12:2. ("Q: So, you asked him -- tell us what you said. A: I asked him if he needed diesel, and that was it. Q: And asked who? A: Daniel. Q: If he needed diesel for what? A: The fire. Q: To burn the cross? A: Yeah.").

Following this initial admission, the defendant equivocated and attempted to deny that he had offered co-conspirators diesel fuel for the cross-burning. Compare id. with id. at 13:1-20 ("Q: And you offered to give him diesel to help him burn that cross; right? A: Not for the cross. I just asked him if he needed it. Q: Well, didn't you just say a moment ago that you gave him diesel to help him burn it? A: If he needed to build a fire. Q: If he needed to build a fire. A: Yeah. Q: You just said a moment ago, if I understood you correctly, that you offered him diesel to help him burn the cross. A: I just asked him if he needed diesel. I didn't imply what it was for. Q: This is after Daniel Danforth said he was going to build and burn a cross; right? A: Yeah. Q: Okay. And you asked him, hey, do you need some diesel? A: Yeah.") and id. at 23:23-24:21 ("Q: . . . you offered him diesel fuel to help him burn it; right? A: (No audible

- 5 -

response) Q: Didn't you? A: No. Not specifically for that. Q: So your cousin Daniel Danforth said he was going to build and burn a cross, that he has got one laid out in front of him, and you say, hey, I've got some diesel fuel for you to use to burn it. Isn't that what happened? A: No. I said if you need to build a fire. Q: If you need to build a fire. Are you going to build a fire at the base of the cross? Is that how it was going to go? A: I don't know. Q: Why would he need to build a fire? A: I don't know. Q: To burn the cross. Isn't that what he just said he was going to do? A: Yeah.").

### 3. The Defendant's May 12, 2010, Statement

On May 12, 2010, following his arrest and advisement of Miranda rights, the defendant made statements to the FBI concerning the cross-burning. Among other things, the defendant told the FBI that he and his attorney had reviewed his grand jury transcripts and that the transcripts had to be wrong because he did not offer Danforth diesel fuel to burn the cross.[2]

### 4. The Defendant's October 28, 2010, Proffer

On October 28, 2010, the defendant proffered with the United States pursuant to an agreement that, among other things, the United States would not use the defendant's statements directly against him unless he offered contradictory testimony or evidence at trial. During this proffer, the defendant initially said that he did not offer Danforth diesel fuel to help burn the cross, but rather because his friend needed to get rid of some diesel fuel. When confronted when the discrepancies in his testimony and statements on this issue, the defendant ultimately admitted that he had, in fact, offered Danforth the diesel so that Danforth could use it to burn the cross.

---

[2] The defendant's false denial of his offer of diesel fuel to Danforth during this statement to the FBI forms the basis of Count Six of the 2d SSI (18 U.S.C. § 1001).

## II.   ARGUMENT

The defendant's attempt to escape responsibility for his perjurious statements to the grand jury should not be countenanced. The defendant did not recant his perjured testimony, as contemplated by Section 1623(d); he repeated his lies over and over again to the grand jury, the FBI, and to representatives of the United States.  The defendant only recanted, if at all, a few months ago when he proffered with the United States, long after any opportunity to avail himself of the recantation defense had passed.  Simply put, Section 1623(d) does not bar prosecution of defendant's perjury charge and the Court should therefore deny his motion to dismiss.

Section 1623(d) sets forth a statutory bar to prosecution for perjury, "[w]here, in the same continuous . . . grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false . . . [and] at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed."  18 U.S.C. § 1623(d).  Although the statute is written in the disjunctive, the Fifth Circuit has interpreted the statutory requirements in the conjunctive.  See United States v. Scrimgeour, 636 F.2d 1019, 1021 (5th Cir. 1981) (holding that "despite the formulation of Section 1623(d) grammatically, the intent of Congress was that a defendant must satisfy both conditions of that subsection"); see also United States v. Denison, 663 F.2d 611, 615 (5th Cir. 1981).  Therefore, there are three requirements for a Section 1623(d) recantation defense: (1) that the defendant recanted his perjury in the same continuous proceeding; (2) that the defendant's perjury did not substantially affect the grand jury proceeding; and (3) that at the time of the defendant's recantation, his perjury had not become manifest.  The defendant cannot meet any of these requirements.

### A. The Defendant Did Not Recant in the Same Continuous Proceeding

The most glaring omission from the defendant's motion is the factual basis to support this so-called recantation. "In order to recant pursuant to section 1623(d), 'the witness must, as a condition precedent to giving truthful testimony, admit that his perjurious testimony was false.'" United States v. Vesich, 724 F.2d 451, 460 (5th Cir. 1984) (quoting United States v. D'Auria, 672 F.2d 1085, 1091-92 (2d Cir. 1982)); see also United States v. Sebaggala, 256 F.3d 59, 64 (1st Cir. 2001) ("In order effectively to recant a prior perjurious statement, the declarant must make an outright retraction and repudiation . . . He also must explain unambiguously and specifically the respects in which his earlier answer was false.") (internal citations and quotation marks omitted); United States v. Tobias, 863 F.2d 685, 689 (9th Cir. 1988) ("a defendant must unequivocally repudiate his prior testimony to satisfy § 1623(d)"); United States v. Scivola, 766 F.2d 37, 45 (1st Cir. 1985) ("a mere implicit admission of rendering false testimony does not satisfy the requirements of an effective recantation under section 1623(d). A witness must make an outright retraction and repudiation of prior false testimony.").

To support his purported recantation defense, the defendant relies upon his admission during his September 25, 2009, grand jury appearance that he offered Danforth diesel fuel to use in the cross-burning, which directly contradicted his testimony during his June 24, 2009, appearance. Although the defendant did initially admit part of his wrongdoing during his second appearance, he then just as quickly denied it. One transcript page (nine questions) after this admission, the defendant contradicted himself and denied having offered Danforth diesel to use to burn the cross. Compare 9.25.2009 Tr. at 11:19-12:2 with id. at 13:1-14. As set forth in the relevant factual background, the defendant continued flip-flopping on this issue for the remainder of his appearance.

This type of back-and-forth, non-committal testimony does not qualify as a recantation. See D'Auria, 672 F.2d at 1092 ("A witness who has lied remains obligated by his oath to tell the truth, without prodding. Unless he admits that he gave false testimony, there is no occasion for a recantation."); United States v. Anfield, 539 F.2d 674, 679 (9th Cir. 1976) ("Testimony which serves to cast doubt as to the truth of that which is perjurious is not a recantation. Being a poor liar does not make one a repentant sinner."); accord Sebaggala, 256 F.3d at 64; Tobias, 863 F.2d at 689; Scivola, 766 F.2d at 45; Vesich, 724 F.2d at 460.

The defendant's failure to recant his perjurious testimony is further underscored by his May 12, 2010, statement to special agents of the FBI, in which he said that grand jury transcripts had to be wrong because he did not offer Danforth diesel fuel to burn the cross. When the defendant proffered on October 28, 2010, he again denied having offered diesel fuel to Danforth for the cross-burning. The defendant eventually acknowledged during the proffer that he had, in fact, offered Danforth diesel fuel for precisely that purpose. This last admission is the closest the defendant has come to a recantation. Even so, at no time has the defendant admitted that his grand jury testimony was false or specifically repudiated his false testimony. To the contrary, from his initial grand jury appearance to his proffer, the defendant has continually equivocated, alternating between truthful assertions and false statements regarding his role in the cross-burning conspiracy. The defendant has failed to satisfy the most rudimentary requirement for a recantation defense -- an actual recantation.

If any recantation occurred, it was certainly not in the same continuous grand jury proceeding. The defendant claims he recanted during his September 25, 2009, grand jury appearance.[3] In actuality, the defendant's recantation, if any occurred, did not occur until his

---

[3] Even if this were true, it is unclear that a second grand jury appearance would satisfy Section 1623(d)'s "same continuous proceeding" requirement. See, e.g., United States v.

proffer with the United States on October 28, 2010. No interpretation of Section 1623(d), however strained, can support a finding that a supposed recantation was in the same continuous grand jury proceeding as perjured testimony given sixteen months and four indictments earlier. The defendant simply cannot meet the threshold requirements required to avail himself of the 1623(d) recantation defense.

### B. The Defendant's Perjury Substantially Affected the Proceeding

Even if the defendant had somehow recanted his perjury in the same continuous proceeding, he cannot satisfy the two remaining requirements of Section 1623(d). "The recantation provision was intended to encourage the witness to correct false testimony promptly, by allowing him to escape prosecution if he recants before the proceeding has been substantially affected or before it has become manifest that such falsity has been or will be exposed." United States v. Lardieri, 506 F.2d 319, 322 (3d Cir. 1974) (internal quotation marks and citation omitted). The defendant's recantation defense fails because by the time he came close to recanting, his perjury had substantially affected the grand jury proceeding and had become manifest.

The defendant's perjury delayed the grand jury's investigation and inhibited its truth-seeking function. This alone constitutes a substantial affect upon the proceeding. See, e.g., United States v. Crandall, 363 F. Supp. 648, 654-55 (W.D.Pa. 1973), aff'd, 493 F.2d 1401 (3d Cir. 1974) (ruling that the defendant's false declarations had substantially affected the proceedings since the grand jury had been deprived initially of relevant testimony as to the guilt of other individuals, which resulted in a several month delay in the grand jury's investigation).

---

McAfee, 8 F.3d 1010, 1013 (5th Cir. 1993) (affirming the district court's finding that the defendant's supposed recantation during a second deposition was not the same continuous proceeding as a previous deposition in which he perjured himself).

The substantive effect of the defendant's perjury (and that of his co-defendants) upon the grand jury is evident from the fact that the investigation and prosecution of this cross-burning has lasted from October, 2008, to the present time; the fact that the defendants have been prosecuted seriatim instead of all together; and the fact that the grand jury returned a total of four indictments in this case. All three defendants -- Joshua James Moro, Jeremy Matthew Moro, and Sonya Marie Hart -- have repeatedly attempted to thwart investigation into the cross-burning and attempted cover-up. The Court should not sanction their behavior by adopting the defendant's strained interpretation of Section 1623(d).

### C. The Defendant Did Not Recant Before His Perjury Had Become Manifest

By the time the defendant recanted -- if he recanted at all -- his perjury was more than manifest; it was charged. The defendant only admitted his role in the cross-burning during his October 28, 2010, proffer because he wanted to resolve the civil rights, perjury, and false statements pending against him -- and he only made such an admission when he knew that, under the proffer agreement, it could not be used directly him. By that time, the timeframe for any Section 1623(d) recantation had long since passed. See United States v. Moore, 613 F.2d 1029, 1043 (D.C. Cir. 1979) ("We conclude that Congress did not countenance in Section 1623(d) the flagrant injustice that would result if a witness is permitted to lie to a judicial tribunal and then, upon only learning that he had been discovered, grudgingly to recant in order to bar prosecution."); United States v. Baldwin, 506 F. Supp. 300, 301 (D. Tenn. 1980) ("To argue that the alleged perjury has not become manifest even after the defendant has been indicted for perjury is untenable. By the time one is indicted for perjury, he has lost the ability to recant."). The defendant cannot meet any of the requirements of the Section 1623(d) recantation defense and his motion to dismiss Count Five of the 2d SSI should be denied.

### III. CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss the perjury charge against him, Count Five of the 2d SSI, should be denied.

Respectfully submitted this 10th day of January, 2011.

        STEPHANIE A. FINLEY
        United States Attorney
        Western District of Louisiana

By:    s/ Mary J. Mudrick
        _____
        MARY J. MUDRICK, LA Bar No. 01992
        Assistant United States Attorney
        300 Fannin Street, Suite 3201
        Shreveport, Louisiana 71101
        (318) 676-3600

        THOMAS E. PEREZ
        Assistant Attorney General
        United States Department of Justice
        Civil Rights Division

By:    s/ Erin Aslan
        _____
        ERIN ASLAN, DC Bar No. 976504
        Trial Attorney, Criminal Section
        950 Pennsylvania Avenue, NW - PHB 5810
        Washington, District of Columbia 20530
        (202) 514-3204

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 10-00135-01 |
| VERSUS | * | JUDGE WALTER |
| JOSHUA JAMES MORO<br>JEREMY MATTHEW MORO<br>SONYA MARIE HART | * | MAGISTRATE JUDGE HORNSBY |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of January, 2011, a copy of the foregoing "United States' Response in Opposition to the Defendant's Motion to Dismiss" was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing was sent by operation of the CM/ECF system to:

J. Ransdell Keene
725 Southfield Road
Shreveport, Louisiana 71106

Michael Allyn Stroud
P O Box 21990
Shreveport, LA 71120-1990

F. Michael Carmody
P O Box 1527
Shreveport, LA 71165

                                                                                             s/ Mary J. Mudrick
                                                                   _____
                                                                  MARY J. MUDRICK, LA Bar No. 01992
                                                                  Assistant United States Attorney
                                                                  300 Fannin Street, Suite 3201
                                                                  Shreveport, Louisiana 71101
                                                                  (318) 676-3600

                                                                  s/ Erin Aslan
                                                                  _____
                                                                  ERIN ASLAN, DC Bar No. 976504
                                                                  Trial Attorney, Criminal Section
                                                                  950 Pennsylvania Avenue, NW - PHB 5116
                                                                  Washington, District of Columbia 20530
                                                                  (202) 514-3204