1           UNITED STATES DISTRICT COURT

2          WESTERN DISTRICT OF LOUISIANA

3              SHREVEPORT DIVISION

4
  UNITED STATES OF AMERICA        *   Criminal Action
5                                 *   No. 10-135-02
  VS.                             *
6                                 *   Shreveport, Louisiana
  JEREMY MATTHEW MORO             *   January 26, 2011
7                                 *   4:00 p.m.
                                  *
8  * * * * * * * * * * * * * * * *

9                  Change of Plea Hearing

10 Certified transcript of proceedings held before the Honorable
   Mark L. Hornsby, United States Magistrate Judge.
11

12 APPEARANCES:

13     For the Government:    AUSA Mary J. Mudrick
                             U.S. Attorney's Office
14                           300 Fannin Street, Suite 3201
                             Shreveport, Louisiana  711101-3068
15
                             Erin Aslan
16                           U.S. Department of Justice
                             Civil Rights Division, Criminal Sec.
17                           950 Pennsylvania Avenue, NW-PHB 5810
                             Washington, DC  20530
18
       For the Defendant:    Mr. Michael Allyn Stroud
19                           Wiener, Weiss & Madison
                             Post Office Box 21990
20                           Shreveport, Louisiana  71120-1990

21 REPORTED BY:    Marie M. Runyon, RMR, CRR
                   Federal Official Court Reporter
22                 300 Fannin Street, Room 4212
                   Shreveport, Louisiana  71101
23                 Phone:  (318) 222-9203

24
   PROCEEDINGS PRODUCED BY MECHANICAL STENOGRAPHY AND TRANSCRIBED
25 BY COMPUTER.

1            (Court called to order with Defendant

2                  present at 4:02 p.m.)

3            THE COURT:  Be seated please.

4        Good afternoon, Ms. Mudrick.

5            MS. MUDRICK:  Good afternoon, Your Honor.

6        Your Honor, in the matter of United States of America

7    versus Joshua James Moro, Jeremy Matthew Moro, and Sonya Marie

8    Hart, Criminal No. 10-00315-01, -02 and -03, the second

9    superseding indictment, we're here today because Mr. Jeremy

10   Matthew Moro wishes to change his formerly entered plea of not

11   guilty and enter a guilty plea to Count 1 of the Second

12   Superseding Indictment, conspiracy against rights.  He's

13   present here with his defense counsel, Allyn Stroud, in court.

14           THE COURT:  All right.  Mr. Stroud, Mr. Moro, would

15   you come up to this microphone.

16       And, Ms. Mudrick, do you have a signed copy of the

17   package that you can tender to the Court for filing?

18           MS. MUDRICK:  Your Honor, we do.  We would offer and

19   introduce into evidence at this time the complete Rule 11

20   package, including the indictment, the Plea Agreement, the

21   Elements of the Offense, the Affidavit of Understanding of

22   Maximum Penalty, and the Consent to Plead Before the Magistrate

23   Judge.  All copies have been executed, except that the Consent

24   is missing the judge's signature.  But I'm going to --

25           THE COURT:  All right.

1          MS. MUNDRICK:  -- tender that to the Court at this

2    time.

3          THE COURT:  All right.  I have the Second Superseding

4    Indictment.  I have the six-page Plea Agreement with

5    Mr. Stroud's signature on page 5, Mr. Moro's signature and

6    other signatures on page 6.  I have the Elements of the

7    Offense.  I have the Understanding of Maximum Penalty and

8    Constitutional Rights bearing Mr. Moro and Mr. Stroud's

9    signature; also the consent to plead before me, which I will

10   sign and date today.

11        All right.  Ms. Cassanova, if you will take care to file

12   those.  If you'll keep them handy, I may ask Mr. Stroud and

13   Mr. Moro to refer to them during our proceedings today.

14        Good afternoon, Mr. Stroud.

15          MR. STROUD:  Good afternoon, Your Honor.

16          THE COURT:  And good afternoon, Mr. Moro.

17          THE DEFENDANT:  Good afternoon.

18          THE COURT:  Mr. Moro, the lawyers got us together

19   today because I am told that you wish to change your previous

20   not guilty plea to a guilty plea to Count 1 in accordance with

21   the Plea Agreement.  Is that correct?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  All right.  In order to receive someone's

24   guilty plea, I have to ask them a long series of questions to

25   make sure that they understand the charge, the penalties that

1    they face, and all of the consequences of a guilty plea to this

2    charge today.  And before I ask you all those questions, I need

3    to have you placed under oath.

4                (Defendant sworn.)

5                THE COURT:  All right.  Mr. Moro, you're now under

6    oath, and your answers to my questions must be truthful.  If

7    they're not truthful, you are subject to additional penalties

8    for perjury.  Do you understand that?

9                THE DEFENDANT:  Yes, sir.

10               THE COURT:  All right.  Let's take up a preliminary

11   issue before I get into the questions.

12          One of the documents that you signed was a Consent to

13   Proceed Before the Magistrate Judge.  Let me tell you orally

14   and on the record, though, that this case, Mr. Moro, is

15   assigned to Judge Walter.  He is the United States District

16   Judge that is assigned to the case.  He is the district judge

17   who would preside over your trial, if you elected to go to

18   trial in lieu of the guilty plea today.

19          And, normally, Judge Walter would preside over your

20   trial, but he is in the middle of another trial.  And due to

21   the shortness of deadlines and so forth, everyone contacted me

22   to see if I was willing to do it today.  And, of course, I'm

23   more than happy to accommodate the request.

24          So Judge Walter is not available.  I'm available to do

25   it, but -- and the law allows me to do that, but it has to be

1  with your consent.  You have the right to enter your guilty

2  plea before Judge Walter, or you have the right to waive that

3  and consent to enter your guilty plea before me today.

4       But either way, I want you to understand that it will be

5  Judge Walter who makes the decision about what your punishment

6  or what your sentence is going to be.  Even if I take your

7  guilty plea today, it is still Judge Walter who will determine

8  punishment.

9       Do you understand, Mr. Moro, that you have the right to

10  enter your guilty plea before Judge Walter?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  All right.  Do you wish to waive that

13  right and enter your guilty plea before me?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  All right.  Mr. Stroud, do you agree with

16  Mr. Moro's decision to go forward and consent to me to take the

17  guilty plea this afternoon?

18           MR. STROUD:  Yes, Your Honor.

19           THE COURT:  All right.  Mr. Moro, let's begin with

20  the questions, sir.  Give me your full name.

21           THE DEFENDANT:  Jeremy Matthew Moro.

22           THE COURT:  And how old are you?

23           THE DEFENDANT:  I was born June 5, '77.  So I'll be

24  33.

25           THE COURT:  How far did you go in school?

1      THE DEFENDANT:  I got a two-year associate degree at

2  Northwest Vo-Tech.

3      THE COURT:  In what?

4      THE DEFENDANT:  Industrial instrumentation.

5      THE COURT:  What kind of work do you do?

6      THE DEFENDANT:  I'm an electrician.

7      THE COURT:  All right.  Do you have any trouble

8  understanding, reading and writing the English language?

9      THE DEFENDANT:  No, sir.

10      THE COURT:  Are you under the influence of any

11  medicines, drugs, alcohol, or any other substance that might

12  interfere with your ability to understand what we're doing in

13  court today?

14      THE DEFENDANT:  No, sir.

15      THE COURT:  Are you feeling well and alert today?

16      THE DEFENDANT:  Yes, sir.

17      THE COURT:  All right.  Do you have any physical or

18  mental problems that would limit your ability to understand

19  what's going on today?

20      THE DEFENDANT:  No, sir.

21      THE COURT:  All right.  Mr. Stroud, do you have any

22  doubts about whether Mr. Moro is competent to enter a guilty

23  plea today?

24      MR. STROUD:  No doubts, Your Honor.

25      THE COURT:  All right.  Mr. Moro, when you were in

1    court with me last, you entered a not guilty plea to this

2    Second Superseding Indictment.  You have the right to stand on

3    that not guilty plea and to go to trial.  At your trial, you

4    are presumed innocent of the charges against you.  You do not

5    have to prove your innocence.  It is the government that has

6    the burden of proof of each element of the offense beyond a

7    reasonable doubt.  And if the government does not meet that

8    burden of proof on each element beyond a reasonable doubt, you

9    would be found not guilty of the charges against you.

10         So you are presumed innocent.  It is the government that

11   has the burden of proof.  You don't have to prove anything.  Do

12   you understand that?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  All right.  If you elected to go to

15   trial, you would have the right to a trial by a 12-person jury.

16   And in order to convict you, the decision of the jury would

17   have to be unanimous -- in other words, all of the jurors would

18   have to agree to make a decision that you were guilty.  Do you

19   understand that?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  At your trial, if you wanted to go to

22   trial, you'd have the right to call witnesses on your behalf,

23   subpoena witnesses and force them to come to court for you if

24   you didn't believe they were willing to come voluntarily.  And

25   you could confront and cross-examine any government witnesses

1    that come to testify against you.  And you could also take the

2    witness stand yourself, if you would like, and testify, but no

3    one can force you to be a witness in your own case.  Do you

4    understand that you have all of those rights?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  All right.  Do you understand that by

7    pleading guilty today you're waiving those rights?  There will

8    be no trial, and you'll be convicted of this Count 1 in

9    accordance with your Plea Agreement based on your guilty plea

10   today.  There will be no trial.  Do you understand that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  All right.  Also by entering a guilty

13   plea today, in order to accept your guilty plea, I'll have to

14   ask you to acknowledge your guilt with regard to the offense to

15   which you're pleading guilty, so I'll also -- you'll also be

16   required to waive your right against self-incrimination.  So

17   you'll have to admit your role in the offense to which you are

18   pleading guilty.  Do you understand that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  All right.  You have the right to an

21   attorney of your choosing at all stages throughout these

22   proceedings.  And if you cannot afford a lawyer, I can -- the

23   Court can appoint a lawyer for you.  You're represented in the

24   case by Mr. Stroud.

25        Mr. Stroud, you are court-appointed in this matter, or

1    are you retained?

2            MR. STROUD:  Court-appointed, Your Honor.

3            THE COURT:  All right.  Mr. Moro, do you believe you

4    have had enough time over the course of this case to meet with

5    and visit with Mr. Stroud about your case?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  And are you satisfied with Mr. Stroud's

8    advice?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  All right.  Mr. Moro, has anyone

11   threatened you in any way or put any pressure on you in any

12   way -- pressure of any kind to try to get you to plead guilty?

13           THE DEFENDANT:  No, sir.

14           THE COURT:  Other than what is set forth in the Plea

15   Agreement that you signed -- other than what's set forth in

16   that Plea Agreement, has anyone made any deals with you or

17   promises with you to try to get you to plead guilty?

18           THE DEFENDANT:  No, sir.

19           THE COURT:  In accordance with the Plea Agreement,

20   you're pleading guilty to Count 1 of the indictment; is that

21   right?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  All right.  Do you know what that

24   count is?

25           THE DEFENDANT:  It's conspiracy when you --

1    THE COURT:  All right.  The conspiracy charge is
2    conspiracy against rights --
3           THE DEFENDANT:  Yes, sir.
4           THE COURT:  -- conspiracy against civil rights.
5       And there is a document -- Ms. Cassanova, could you
6    forward the signed plea package to Mr. Stroud so he'll have
7    that readily available to him.
8           (Court hands document to Counsel.)
9           MR. STROUD:  Thank you.
10          THE COURT:  One of the documents that you signed --
11   that was -- as part of your Plea Agreement is a document called
12   "Elements of the Offense."  And I'll have Mr. Stroud get that
13   for you.
14          MR. STROUD:  We have it.
15          THE COURT:  It's somewhat near the end of the
16   document.
17          MR. STROUD:  Yes, sir.
18          THE COURT:  It's called "Elements of the Offense
19   Conspiracy to Deprive Person of Civil Rights."  And these are
20   the elements, Mr. Moro, that the government would have to prove
21   at your trial in order to convict you of this Count 1 charge of
22   conspiracy.  Each one of these elements would have to be proved
23   beyond a reasonable doubt.  So I just want to go over -- go
24   over them with you now to make sure that you know what these
25   elements are.

1        Title 18, United States Code, Section 241, makes it a

2    crime for two or more persons to conspire, to injure, oppress,

3    threaten or intimidate any person in the free exercise or

4    enjoyment of any right or privilege secured to the victim by

5    the Constitution or laws of the United States.

6        For the defendant to be found guilty of this crime, the

7    United States has to prove each of the following beyond a

8    reasonable doubt:  first, that a conspiracy existed; second,

9    that the purpose of the conspiracy was to injure, oppress,

10   threaten, or intimidate one or more victims in the enjoyment of

11   a right secured by the Constitution or laws of the United

12   States; and third, that the defendant knowingly and willfully

13   entered into the conspiracy, knowing of its unlawful purpose.

14       The indictment charges that the defendant conspired to

15   deprive victims of the following right:  the right to occupy a

16   dwelling free of injury, intimidation or interference based on

17   race.  This right is one secured by the Constitution and laws

18   of the United States.

19       Do you understand, Mr. Moro, that those are the elements

20   of the offense to which you are pleading guilty?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  All right.  Mr. Moro, let me just ask you

23   straight up, sir.  I asked you whether there were any threats

24   or promises or deals.  You assured me that there are none.  Are

25   you pleading guilty to the charge in Count 1, this conspiracy

1    to deprive a person of their civil rights -- are you pleading

2    guilty to that count, Count 1, because you are, in fact, guilty

3    of that offense?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  All right.  Let's look at the Plea

6    Agreement, Mr. Stroud and Mr. Moro.

7         My goal today is to go over some of what I consider the

8    more -- we're not going to read every word of it.  I'm going to

9    go over the more important provisions.  I'll jump around a

10   little bit.  Because I want to make sure -- and I know you've

11   gone over it.  Mr. Stroud is a very experienced criminal

12   defense lawyer.  I know he's gone over it with you.  But the

13   law requires me to hit the big points on it today, and that's

14   what I want to do.

15        Flip to the last page, Mr. Moro.  It is page 6.  And

16   confirm for me, sir, that that is your signature on the last

17   page of that Plea Agreement.

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  All right.  Before you signed that Plea

20   Agreement, did you read it?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Did you discuss it with Mr. Stroud?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:   Is there anything in the Plea Agreement

25   that you did not understand?

1        THE DEFENDANT:  No, sir.

2        THE COURT:  Is there anything in the Plea Agreement

3   that you believe is wrong?

4        THE DEFENDANT:  No, sir.

5        THE COURT:  All right.  Now, on the first page of it,

6   page 1, paragraph B-1 says that you're pleading guilty to

7   Count 1.

8        And if you turn the page to page 2, paragraph C-1, it

9   states that the Government will dismiss at sentencing -- in

10   exchange for your plea to Count 1, it will dismiss at

11   sentencing Counts 2, 3, 4, 7, and 8.  So all other charges in

12   which you are -- counts that you're charged in, in this

13   indictment, in exchange for your plea to Count 1, your plea of

14   guilty to Count 1, the Government is going to dismiss those

15   other counts.  Is that your deal?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  All right.  In exchange for your guilty

18   plea, paragraph C-1 goes on to say that it's -- the

19   Government's agreeing to not prosecute you for any other

20   offense known to the United States that is based on the

21   investigation which forms the basis of this Second Superseding

22   Indictment.

23        Paragraph -- flip back, Mr. Stroud, to that first page,

24   paragraph B-2.

25        Paragraph B-2 says, Mr. Moro, that you're going to

1   cooperate with the government.  Do you understand that that's
2   part of your deal?
3           THE DEFENDANT:  Yes, sir.
4           THE COURT:  All right.  Flip to Section E where it
5   talks in more detail about that cooperation.  The cooperation
6   is in paragraph E-1.  You're agreeing to cooperate fully and
7   truthfully in this investigation, the government's
8   investigation of this matter, and any other criminal matter
9   about which you have knowledge.  Do you understand that that is
10  your obligation?
11          THE DEFENDANT:  Yes, sir.
12          THE COURT:  The obligation in E-2 is specified to
13  include, but not be limited to, testifying in court.  It might
14  be before a grand jury, or it might be testifying as a witness
15  at trial.  Do you understand that you are agreeing to testify
16  and to testify truthfully?
17          THE DEFENDANT:  Yes, sir.
18          THE COURT:  All right.  Your failure to testify
19  truthfully can result in you being prosecuted for perjury or
20  for giving false statements, and the Government will have the
21  right to withdraw from this Plea Agreement if you don't testify
22  at their request or if you don't testify truthfully.  Do you
23  understand that?
24          THE DEFENDANT:  Yes, sir.
25          THE COURT:  All right.  Paragraph E-3, you're being

```
 1   given immunity for future statements that you make to the
 2   government in furtherance of your cooperation.  But your
 3   statements and your testimony, again, must be truthful.  If
 4   they're not, the same penalties for perjury or for making false
 5   statements.  And, again, the Plea Agreement can be withdraw if
 6   you make false statements or if you substantially misrepresent
 7   your role in this offense.
 8          And then, finally, paragraph E-4, the Government agrees
 9   to advise the Court at your sentencing about any assistance and
10   cooperation that you do provide.  But it is up to the
11   Government to make the determination about whether you have, in
12   fact, provided any real assistance to the government.
13   Mr. Stroud can't make the Government make that representation
14   to the Court.  It's going to be up to the Government to
15   determine whether you have provided any real assistance to the
16   government.  And if so, the Government may choose to then call
17   that to Judge Walter's attention at sentencing.  Do you
18   understand?
19               THE DEFENDANT:  Yes, sir.
20               THE COURT:  All right.  We talked about your
21   responsibilities to cooperate, to testify.  The United States
22   has obligations.  We talked about its obligation to dismiss the
23   remaining counts in paragraph C-1.
24          Paragraph C-2 says the United States will do something
25   else -- they'll move the Court for a one-point reduction in the
```

1    Sentencing Guidelines, in the offense level, if your offense
2    level is 16 or greater, because you have assisted the
3    authorities by coming forward and timely notifying them so that
4    the United States doesn't have to get ready for trial and do
5    the preparation work.  So they are agreeing to move the Court
6    for a one-point reduction if your offense level reaches that
7    point.
8            One of the other documents that you signed as part of the
9    plea agreement was a document called "Understanding of Maximum
10   Penalty and Constitutional Rights."  Look at page 2 of that
11   document, Mr. Moro, and can you confirm for me that that is, in
12   fact, your signature?
13           THE DEFENDANT:  Yes, sir.
14           THE COURT:  All right.  Did you read that
15   agreement --
16           THE DEFENDANT:  Yes, sir.
17           THE COURT:  -- that document before you signed it?
18       It went over your rights to counsel, to plead not guilty,
19   to go to trial.  I've gone over all of that again with you in
20   court today, but those rights are also set out for you here.
21   Did you understand those rights as you read this document?
22           THE DEFENDANT:  Yes, sir.
23           THE COURT:  All right.  Do you have any questions
24   about any of those rights that I've gone over with you or any
25   of the rights that are set forth in this document called

1    "Understanding"?

2           THE DEFENDANT:  No, sir.

3           THE COURT:  All right.  It also says you understand

4    the maximum penalties that you face.  Have you discussed the

5    maximum penalties with Mr. Stroud?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  What is the maximum jail time that you

8    face on this count to which you are pleading guilty?  The

9    maximum number of years.

10          THE DEFENDANT:  Ten.

11          THE COURT:  All right.  Let's look at paragraph D-1

12   of your Plea Agreement.  And paragraph D-1 does confirm that

13   you face a maximum term of imprisonment of not more than 10

14   years -- so you got it right, not more than 10 years -- or a

15   fine of not more than $250,000, or both.  So you face

16   imprisonment, you face the fine, you face both.  You also

17   face -- up to 10 years, up to a $250,000 fine, or both.

18          Plus there's a special assessment of what we call the

19   "Crime Victim Fund."  Every defendant has to pay that at the

20   time of their guilty plea, and it's $100 per count.  And you're

21   only pleading to one count, so you will be obligated to pay

22   immediately $100 to the Crime Victim Fund.  Do you understand

23   that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  All right.  And Mr. Stroud can assist you

1   with where to do all that after our proceedings today.

2        Now, let's talk about supervised -- well, first, do you

3   have any questions about the maximum penalties that we talked

4   about?

5             THE DEFENDANT:  No, sir.

6             THE COURT:  All right.  Let's talk about supervised

7   release.  Paragraph D-3 sets forth in your Plea Agreement that

8   you may receive a term of supervised release of not less than

9   two years nor more than three years in addition to any term of

10  imprisonment imposed by the Court.  So two to three years on

11  supervised release.  Do you understand that?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  All right.  Supervised release is -- and

14  that's on top of any term of incarceration.  Supervised release

15  is similar to what, in the state court system, they call

16  "parole."

17       And supervised release has terms and conditions on it

18  that govern your behavior while you're on release.  And if you

19  violate those terms and conditions, your release can be revoked

20  and you can be returned back to incarceration for the full

21  period of the supervised release, even though you may have

22  successfully completed some of the supervised release before

23  there was a violation.

24       So do you understand that you -- your supervised release

25  can be revoked if there is a violation of the terms and

1    conditions?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And even if you violate the terms and

4    conditions in the middle of the term of supervised release,

5    Judge Walter could revoke your supervised release and return

6    you to prison for up to the full term of supervised release,

7    even though you've successfully completed some of the release.

8    You understand that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  All right.  On page 3 of the Plea

11   Agreement, there is a provision down there, paragraph 9 and

12   paragraph 10, Mr. Moro, that I'm going to call to your

13   attention.

14        Judge Walter, as I explained to you, is going to explain

15   what the appropriate punishment or sentence should be, and that

16   is something that Judge Walter alone will decide.  Mr. Stroud

17   may make a recommendation or he may make an argument to Judge

18   Walter about what that might be.  The Government might have

19   some input.  I don't know about that.  But Judge Walter is not

20   bound by any recommendations that might be made by counsel.

21   Sentencing is solely within Judge Walter's determination.  Do

22   you understand that?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  All right.  Ms. Mudrick, can you confirm

25   that there's no issues here, again, with restitution or

1    forfeiture?

2              MS. MUDRICK:  There are none, Your Honor.

3              THE COURT:  All right.  There are one or two special

4    fine provisions that I wanted to call to your attention.  We

5    talked about the maximum fine that you could receive, Mr. Moro.

6    And let's see.  Paragraph 6 on page 3 says any fine imposed

7    will be made due and payable immediately.  Do you understand

8    that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  And any federal income tax refund that

11   might be coming to you is going to be applied toward any

12   outstanding financial obligations that you have to the court.

13   Do you understand that as well?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  All right.  Let's flip over to page 4,

16   Mr. Stroud, and talk about paragraph F, reinstatement of the

17   charges and waiver of Rule 410.

18        Paragraph F-1, Mr. Moro, says that if this plea gets

19   reversed or overturned for any reason, then the charges against

20   you that are in this indictment will automatically be

21   reinstated, just automatically come back to life again, without

22   the need for the Government to have to go back to the grand

23   jury process and go back through the entire grand jury process.

24        So do you understand that if this plea gets reversed,

25   gets vacated, gets set aside or something, the charges that are

1   against you -- all of the charges that are against you in that

2   Second Superseding Indictment are automatically reinstated --

3   in other words, they come back into life -- do you understand

4   that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Also, on the next page, paragraph 2,

7   paragraph F-2, defendant understands and agrees that if this

8   plea is reversed or overturned for any reason, he knowingly and

9   voluntarily waives the protections offered by Rule 410, Rules

10  of Evidence, and agrees that any and all statements he made

11  during the plea negotiations and this plea hearing today will

12  be admissible against you in any proceeding.  Do understand

13  that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  All right.  Mr. Stroud, before I go over

16  Sentencing Guidelines with Mr. Moro, let me ask you.  Are there

17  any key provisions of that Plea Agreement that I've overlooked?

18  I wanted to call the key provisions to Mr. Moro's attention.

19  Are there any items that come to mind now that the Court has

20  overlooked?

21         MR. STROUD:  No, sir.  I believe you've hit all the

22  key provisions, Your Honor.

23         THE COURT:  Ms. Mudrick, same question.

24         MS. MUDRICK:  The Government would agree that you've

25  done a thorough job with that Plea Agreement, Your Honor.

1           THE COURT:  All right.  Let me emphasize something to

2    you, Mr. Moro -- that while we've gone over the maximum

3    penalties that you face, I emphasize to you that I don't know

4    and cannot tell you today what your sentence will be or what

5    your likely sentence will be.

6           Before Judge Walter can impose a sentence in your case,

7    the law requires that the probation office conduct an

8    investigation into your background.  That's called a

9    "presentence investigation," and it results in a written

10   presentence report.

11          That report and that investigation is going to be a

12   detailed look into Jeremy Moro's background -- all of your

13   personal history, your family, relations, employment, finances,

14   medical.  It will also look at your criminal history.

15   Obviously, criminal history is an important factor the Court

16   takes into account in determining what an appropriate

17   punishment should be.  And it will also look at whether there

18   are any aggravating circumstances in the case and whether there

19   are any mitigating circumstances.

20          But based on that investigation, together with your

21   criminal history and the seriousness of the offense, there is a

22   sentencing range that is set forth in the United States

23   Sentencing Guidelines that will recommend a range of punishment

24   for you.  I do not know what that range is going to be.  But

25   there is the offense level on one side of the page -- I'm sure

1    Mr. Stroud showed you this -- and there is --

2              THE DEFENDANT:  (Nods head.)

3              THE COURT:  You're nodding yes.  He did?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And then there is the criminal history

6    categories -- I, II, III, and IV -- on the top of the page.

7    And where the two meet, there is a recommended range of months

8    of sentence.

9         You need to understand that those guidelines are advisory

10   only.  Judge Walter may sentence you within the guideline range

11   that is set forth by those guidelines or based on his

12   evaluation of the offense and based on his evaluation of your

13   criminal history and his evaluation of your background and your

14   circumstances.  He may find that it is more appropriate to

15   sentence you below that range or above that range.  And Judge

16   Walter may sentence you all the way up to the maximums that we

17   have gone over.  Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  All right.  Do you have -- you went over

20   the Sentencing Guidelines --

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  -- with Mr. Stroud?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  And do you feel like you understand the

25   basic process?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Do you have any questions about it?

3        THE DEFENDANT:  No, sir.

4        THE COURT:  All right.  Mr. Stroud, are you satisfied

5    that Mr. Moro understands the maximum penalties that he faces

6    and the basic operation of the guideline range?

7        MR. STROUD:  Yes, Your Honor.

8        THE COURT:  Mr. Moro, you're represented by

9    Mr. Stroud, who is a very able criminal defense lawyer.  He's

10   very experienced in this court.  And Mr. Stroud may have given

11   you the benefit of his experience in trying to help you predict

12   what your sentence might be.  And if he did so, that's

13   appropriate.

14       But it's important that you understand that that is just

15   his educated guess.  He does not know what the range is going

16   to be.  He does not know what the actual sentence is going to

17   be.  That is a matter that is entirely -- we won't know the

18   range until we get the presentence report, and then we won't

19   know the sentence to be handed down until Judge Walter hands

20   down that sentence.

21       So there are no guaranties about what your sentence is

22   going to be or what your sentence might be.  And it might be

23   all the way up to those maximums that we discussed.  Do you

24   understand?

25       THE DEFENDANT:  Yes, sir.

1          THE COURT:  Just so that we're clear, has anybody

2   made any promises to you about what your sentence might be?

3          THE DEFENDANT:  No.  No, sir.

4          THE COURT:  Do you understand that if your sentence

5   is more harsh or more severe than you expect it might be,

6   you're still bound by this Plea Agreement, and you won't be

7   able to walk away from it.  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  Mr. Moro and Mr. Stroud, why

10  don't you have a seat at counsel's table, and I'll call on

11  Ms. Mudrick to present a factual basis.

12         MS. MUDRICK:  Your Honor, actually, Ms. Aslin is

13  going to ask the questions of Agent Johnson.

14         THE COURT:  All right.  Very well.

15      Ms. Aslin, come up, please.

16         MS. ASLIN:  Afternoon, again, Your Honor.

17         THE COURT:  Good afternoon, Ms. Aslin.

18         MS. ASLIN:  We call Special Agent Matthew Johnson.

19         (Witness sworn.)

20         THE COURT:  Have a seat, sir.

21                      DIRECT EXAMINATION

22  BY MS. ASLIN:

23  Q.    Good afternoon.

24  A.    Afternoon.

25  Q.    Please tell us your name.

1    A.    Matthew Johnson.

2    Q.    What is your occupation?

3    A.    Special agent, Federal Bureau of Investigation.

4    Q.    Are you the FBI case agent that is assigned to an

5    investigation into a cross-burning that took place on Danforth

6    Road in Athens, Louisiana, in October of 2008?

7    A.    I am.

8    Q.    Did your investigation into this cross-burning reveal

9    whether or not the defendant, Jeremy Matthew Moro, was involved

10   in the cross-burning?

11   A.    Yes.

12   Q.    What was the nature of Jeremy Morrow's involvement?

13   A.    That Jeremy Moro conspired with Daniel Danforth and

14   Joshua Moro to burn a cross on Danforth Road in Athens,

15   Louisiana.  Ultimately, Mr. Moro and Mr. Danforth were involved

16   in the cross-burning; and, in doing, they interfered with the

17   housing rights of Betty Danforth, Shelley Palmer, Jabril

18   Palmer, Shelley Palmer's minor son, and Abra Byrd.

19   Q.    Now, you mention that the defendant both conspired with

20   Daniel Danforth and then acted with Daniel Danforth to actually

21   carry out the cross-burning; is that correct?

22   A.    That is correct.

23   Q.    Starting with the -- or focussing, rather, just on the

24   conspiracy, itself, could you please describe the nature of the

25   conspiracy to the Court.

A.     Daniel Danforth was upset that his grandparents had allowed his cousin, Shelley Palmer, to live with a black man. As a result, Mr. Danforth decided to burn a cross.  And on or about the evening of October 23, 2008, he solicited the help of a number of individuals to burn that cross.

Q.     And was one of those individuals the defendant, Jeremy Matthew Moro?

A.     That is correct.

Q.     And in soliciting defendant Moro's assistance, did Daniel Danforth explain his purpose in burning that cross?

A.     Yes, he did.

Q.     And what was that purpose?

A.     That purpose was that Mr. Danforth was upset that his grandparents allowed Shelley Palmer to live with a black man.

Q.     And, in essence, was the purpose of the conspiracy to injure or oppress, threaten or intimidate the victims you previously described in the enjoyment of a right secured and protected by the Constitution and laws of the United States?

A.     That's correct.

Q.     And was that right the right to occupy a dwelling free from injury, intimidation or interference based on race?

A.     Yes.

Q.     Did your investigation reveal that Jeremy Matthew Moro knowingly and willfully entered into that conspiracy with an understanding of its unlawful purpose?

1   A.    Yes.

2   Q.    And you described, I believe, a moment ago that in

3   addition to agreeing to carry out the cross-burning, the

4   defendant actually undertook several steps to assist in

5   transporting, burning and then ultimately removing the cross;

6   is that correct?

7   A.    Yes.

8   Q.    Now, after Jeremy Moro and Daniel Danforth burned the

9   cross on Danforth Road for the reasons you've described, was

10  the cross immediately discovered?

11  A.    No, it was not.

12  Q.    And did the defendant, Jeremy Moro, take any steps to

13  ensure that the victims would discover the burned cross

14  afterwards?

15  A.    Yes.

16  Q.    What steps were those?

17  A.    He allowed Daniel Danforth to use his cell phone so that

18  Mr. Danforth could contact the victims and tell them about the

19  cross.

20  Q.    And did your investigation reveal whether or not the

21  victims did, in fact, find the burned cross on the property?

22  A.    Yes.

23  Q.    And what was their reaction to the burned cross?

24  A.    They were upset and scared by the cross, and they

25  ultimately contacted the Claiborne Parish Sheriff's Office.

1  Q.    Did the Sheriff's Office refer the matter to the FBI?

2  A.    Yes.

3  Q.    Did you, in connection with your investigation, arrange

4  to interview the victims and collect the cross as evidence?

5  A.    I did.  But prior to that, the day that I was notified of

6  the cross-burning, I was told by the Claiborne Parish Sheriff's

7  Office that the cross had disappeared.

8  Q.    Did your investigation reveal whether or not the

9  defendant, Jeremy Moro, was involved in removing the burned

10  cross so it would be unavailable to the FBI as evidence?

11  A.    That is correct.

12  Q.    And did the investigation reveal that Defendant Moro

13  conspired with Daniel Danforth and Sonya Hart to remove that

14  cross for the stated purpose?

15  A.    Yes, that's correct.

16  Q.    In the course of your investigation, did the defendant,

17  Jeremy Moro, make false statements to you and to the grand jury

18  concerning his involvement in the cross-burning and removal of

19  the burned cross?

20  A.    Yes.

21       MS. ASLIN:  Your Honor, if I may have a moment's

22  indulgence?

23       THE COURT:  Yes, ma'am.

24  BY MS. ASLIN:

25  Q.    In the course of the investigation, has Jeremy Moro

1  ultimately admitted his involvement in the conspiracy and
2  cross-burning to you?
3  A.    Yes, he has.
4         MS. ASLIN:  Your Honor, I have no further questions
5  now.
6         THE COURT:  All right.  Mr. Stroud and Mr. Moro,
7  would you come back up to the corner mike, please.
8         (Defense complies.)
9         THE COURT:  All right.  Mr. Stroud, do you have any
10  cross-examination of the agent?
11         MR. STROUD:  No, sir.
12         THE COURT:  Thank you, sir.  You can step down.
13         (Witness complies.)
14         THE COURT:  Mr. Moro, did you listen to the testimony
15  of the FBI agent?
16         THE DEFENDANT:  Yes, sir.
17         THE COURT:  Do you agree with it?
18         THE DEFENDANT:  Yes, sir.
19         THE COURT:  All right.  Based on the testimony of
20  Agent Johnson and based on your sworn answers to my questions
21  today, Mr. Moro, I find that you are competent to enter this
22  guilty plea today.  I find that your Plea Agreement has been
23  properly executed, signed, filed.  I find that there is a
24  factual basis to support the charge of which you are pleading
25  guilty -- namely, conspiracy to deprive a person of their civil

1    rights.  I find that you are entering your guilty plea freely

2    and voluntarily, with a full understanding of the charge and of

3    the maximum penalties that you face.  And I find that you are

4    making a knowing, voluntary waiver of your right to a jury

5    trial, with the full assistance of your counsel.

6         So I recommend to Judge Walter that your guilty plea to

7    Count 1 be accepted, in accordance with the Plea Agreement.

8         Mr. Stroud, do you and Mr. Moro have any objections to my

9    recommendation that the Plea Agreement be accepted?

10              MR. STROUD:  We have no objections, Your Honor.

11              THE COURT:  All right.  Any objections to the

12   recommendation must be filed with the court, in writing, within

13   14 days.

14        Mr. Moro, as part of this colloquy that we just engaged

15   in, we talked about Probation doing an investigation into your

16   background -- the presentence investigation.  That process

17   begins today.

18        Ms. Karen Lee from the probation office is sitting in the

19   first chair of the jury box.  She is going to walk out of the

20   courtroom with you and Mr. Stroud, but the actual presentence

21   investigation is going to be conducted by another probation

22   officer named Jonathan Guthrie.  But Ms. Lee is going to put

23   you in touch with him.

24        I urge you to cooperate fully with Probation in the

25   presentence investigation and in the presentence -- preparation

1   of the presentence report, because that report will be relied

2   on by Judge Walter in making the best decision at your

3   sentencing.

4          We're going to set sentencing for April the 28th at 2:00

5   p.m.  April the 28th at 2:00 p.m.

6          I ask the court reporter to please transcribe these

7   proceedings and deliver the transcript directly to my chambers

8   so that I can provide it to Judge Walter with the other

9   appropriate paperwork well in advance of the sentencing.

10         Mr. Moro, do you have any questions about any of the

11  matters that you and I have discussed in court today?

12             THE DEFENDANT:  No, sir.

13             THE COURT:  All right.  Mr. Stroud, is there anything

14  other than -- anything else that I need to put on the record

15  with regard to Mr. Moro's guilty plea?

16             MR. STROUD:  Not that I can think of, Your Honor.

17             THE COURT:  And have you tendered back to

18  Ms. Cassanova the signed copy?  I gave it to you.  Perhaps that

19  was a dangerous thing to do.

20         You have the original?

21             MR. STROUD:  I do have it, and I'll tender it back

22  to --

23             THE COURT:  Hand it to Ms. Cassanova.  And I thank

24  you for that.

25         All right.  Ms. Aslin, on behalf of the Government, is

1  there anything else that I need to put on the record for

2  Mr. Moro's guilty plea?

3          MS. ASLIN:  No, Your Honor.

4          THE COURT:  All right.  Mr. Moro, you are ordered

5  continued to be released on the same bond that you were

6  released on when you first came into court, all with the same

7  conditions that apply.  Please visit with Ms. Lee.  Please

8  cooperate with probation.  And Judge Walter will be expecting

9  you in court for sentencing on April the 28th at 2:00.

10         One last piece of instruction and advice.  Please stay in

11 contact with Mr. Stroud.  Because as the presentence report is

12 completed, he will have an opportunity to sit down with you and

13 visit with you about it, go over it, see if there are any

14 problems, see if he needs to object to anything.  So that when

15 you see that Mr. Stroud is trying to get in touch with you,

16 please get back with him as soon as you can, because it's

17 important that y'all have a good opportunity to go over all of

18 that information so that he can represent you to the best of

19 his ability at sentencing.

20         Thank you, all, for your courtesies, your cooperation,

21 your patience.

22         Court is adjourned for the afternoon.

23             (Proceedings concluded at 4:45 p.m.)

24

25

1                              Certificate

2     I hereby certify this 8th day of February, 2011, that the
      foregoing pages numbered 1-33 is, to the best of my ability and
3     understanding, a true and correct transcript from the record of
      proceedings in the above-entitled matter.

4

5                                        /s/ Marie M. Runyon
6                                        Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25